UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FOREST LABORATORIES, INC., et al.,

              Plaintiffs,              Civil Action No.
                                                    06-CV-13143

vs.

                                                      HON. BERNARD A. FRIEDMAN

CARACO PHARMACEUTICAL
LABORATORIES, LTD., et al.,

              Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION
## FOR HEARING ON SPOLIATION OF EVIDENCE

        This matter is presently before the Court on Defendants' Motion for Hearing on Spoliation of Evidence [docket entry 141] ("Spoliation Motion"). This matter has been extensively briefed by the parties and the Court has had an opportunity to thoroughly examine the motion papers and the documents attached thereto. For the reasons that follow, the Court will grant Defendants' Spoliation Motion and order a hearing on spoliation.

I.        **DEFENDANTS' SPOLIATION MOTION**

        Defendants filed their Spoliation Motion on March 3, 2009. Defendants allege that Plaintiffs have intentionally or recklessly destroyed or rendered unsearchable key electronic records (referred to as "backup tapes") containing documents – particularly, internal e-mail correspondence – tending to show that Plaintiffs' drug, escitalopram, did not produce unexpected results and therefore is obvious. In their Spoliation Motion, Defendants ask the Court to take the following three actions: (1) "hold a one-day hearing to create a record of Forest's spoliation of evidence," (2) "forbid Forest from claiming at trial that escitalopram produced unexpected results (and thus was

not 'obvious')," and (3) "require Forest to pay Caraco's attorney fees." (Spoliation Motion at 19.) Plaintiffs deny that they engaged in any such misconduct because they "preserved e-mails on [their] active file server and continued [their] standard operating procedures in good faith," *see* Pls.' Resp. at 5, and request that the relief sought by Defendants be denied.

II. **ANALYSIS**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "[S]poliation is not a substantive claim or defense but a 'rule of evidence,' and thus is 'administered at the discretion of the trial court.'" *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995)). The Sixth Circuit has recently recognized that federal law governs spoliation sanctions in all federal court cases, thereby bringing the case law in the Sixth Circuit "in line with other courts of appeals." *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (*en banc*). As the Sixth Circuit has explained, there are two reasons for applying federal law with regard to spoliation issues:

> First, the authority to impose sanctions for spoliated evidence arises not from substantive law but, rather, "from a court's inherent power to control the judicial process." Second, a spoliation ruling is evidentiary in nature and federal courts generally apply their own evidentiary rules in both federal question and diversity matters.

*Id.* (citations omitted). As articulated by the Second Circuit,

> a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or

defense.

*Residential Funding Corp. v. Degeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-112 (2d Cir. 2001)). "The burden is on the party seeking to use the evidence to show the existence of each criterion." *See Jandreau v. Nicholson*, 492 F.3d 1372, 1375 (Fed. Cir. 2007). The Court will discuss each element of the *Residential Funding* test, in turn, below.

    A.    *Duty to Preserve*

Defendants must first show that Plaintiffs "had an obligation to preserve [the allegedly spoliated evidence] at the time it was destroyed." *See Residential Funding*, 306 F.3d at 107. "It goes without saying that a party can only be sanctioned for destroying evidence if it had a duty to preserve it." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). "If [Plaintiffs] had no such duty, then [they] cannot be faulted. *See id.* "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). *See also Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) ("[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation"). Thus, the first step in the analysis is to determine the "trigger date," or "the date a party is put on notice that it has a duty to preserve evidence." *See Clark Constr. Group, Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005). "Any destruction of potentially relevant evidence that occurs before the trigger date would be harmless, since the party was unaware of a need to safeguard evidence. The destruction of

documents and evidence after the trigger date, however, is not allowed." *Id.*

Defendants do not clearly explain when they believe Plaintiffs' duty to preserve evidence related to the '712 patent arose. On the one hand, Defendants state that Plaintiffs "should have known by the late 1990s, when it first began developing escitalopram, that litigation over the '712 patent was inevitable." (Spoliation Mot. at 16.) Yet, Defendants also argue that "[a]t the very latest, Forest knew by September 2003—when Ivax [Pharmaceuticals, Inc. ("Ivax")] notified Forest of its intent to market generic escitalopram—that its e-mails discussing the effectiveness of this 'new' drug 'may be relevant to future litigation.'" (*Id.*) Plaintiffs take the position that they "reasonably anticipated litigation with Ivax in September 2003" and that "September of 2003 . . . [was] the earliest time at which Lundbeck arguably had a duty to preserve documents for its potential litigation with Ivax." (*See* Pls.' Resp. at 8.)

The Court finds that Plaintiffs' obligation to preserve relevant evidence related to the '712 patent arose in August 2003, when Plaintiffs received notice that Ivax had filed an Abbreviated New Drug Application containing the first Paragraph IV certification against Lexapro.[1] It was at this time that Plaintiffs had a duty to preserve all relevant evidence concerning the '712 patent for use in the imminent litigation with Ivax and in any "anticipated litigation," such as the present matter. Defendants offer no evidence in support of their position that Plaintiffs "should have known by the late 1990s, when [they] first began developing escitalopram, that litigation over the '712 patent was inevitable." (Spoliation Mot. at 16.) In *Zubulake*, the court considered how early the duty to preserve might arise. *See* 220 F.R.D. at 216-217. There, the court determined that the duty

---

[1] Roughly six weeks later, on September 22, 2003, Plaintiffs brought suit against Ivax in the District of Delaware alleging infringement of the '712 patent, the same patent at issue in the present case.

4

arose in April 2001—before the complaint was filed and before the spoliating company (UBS) instructed its employees to preserve evidence potentially relevant to the litigation—when (1) UBS employees began titling e-mails pertaining to Zubulake "UBS Attorney Client Privilege" and (2) a UBS employee admitted in his deposition that he feared litigation from as early as April 2001. *Id.* The court noted that

> [m]erely because one or two employees contemplate the possibility that a fellow employee might sue does not generally impose a firm-wide duty to preserve. But in this case, it appears that almost everyone associated with Zubulake recognized that possibility that she might sue.

*Id.* at 217. Thus, the court concluded based on the two pieces of evidence above that "the relevant people at UBS anticipated litigation in April 2001" and that the duty to preserve therefore arose at that time. *Id.*

Unlike in *Zubulake* where the party moving for relief on spoliation offered evidence demonstrating that the duty to preserve arose well before the complaint was filed, Defendants in the present case have offered no evidence which could support a finding that the duty to preserve arose in "the late 1990s." In particular, Defendants have offered no proof that anyone under Plaintiffs' control had reason to anticipate, or actually did anticipate, litigation in the late 1990s.[2] To the extent Defendants seek relief related to any alleged spoliation of evidence occurring before August 2003, such relief is not cognizable because "[a]ny destruction of potentially relevant evidence that occurs

---

[2] Defendants state only that "[g]iven the nature of the Hatch-Waxman litigation framework and the fact that Forest was seeking, in the '712 patent, to claim a known compound, it should have known by the late 1990s, when it first began developing escitalopram, that litigation over the '712 patent was inevitable." (Spoliation Mot. at 16.) The Court rejects this argument, as a rule requiring large corporations such as Plaintiffs to retain backup tapes whenever future litigation is merely *possible* would be "crippl[ing]." *See Zubulake*, 220 F.R.D. at 217.

5

before the trigger date would be harmless, since the party was unaware of a need to safeguard evidence." *See Clark Constr. Group*, 229 F.R.D. at 136. However, to the extent Defendants seek relief for any spoliation occurring in or after August 2003, such relief is potentially cognizable. Plaintiffs concede that they did not halt all recycling of backup tapes until May 2005. (*See* Pl.'s Resp. at 6 n.3.) As Plaintiffs failed to preserve backup tapes after the trigger date, the spoliation analysis must proceed to the next step.

Having determined that potentially relevant evidence was destroyed after the trigger date, the next step is to determine whether the spoliated evidence falls within the scope of evidence that must be preserved. "A party is under no duty to 'preserve every shred of paper, every e-mail or electronic document.'" *Clark Constr. Group*, 229 F.R.D. at 136 (quoting *Zubulake*, 220 F.R.D. at 217). However, "[a] party or anticipated party must retain all relevant documents (but not multiple identical copies) in existence at the time the duty to preserve attaches, and any relevant documents created thereafter." *Zubulake*, 220 F.R.D. at 218. As articulated by the *Zubulake* court,

> [t]he scope of a party's preservation obligation can be described as follows: Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents. As a general rule, that litigation hold does not apply to inaccessible backup tapes (e.g., those typically maintained solely for the purpose of disaster recovery), which may continue to be recycled on the schedule set forth in the company's policy. On the other hand, if backup tapes are accessible (i.e., actively used for information retrieval), then such tapes would likely be subject to the litigation hold.

*Id*. Thus, if the backup tapes destroyed after the trigger date were "inaccessible," Plaintiffs were under no duty to preserve them under the general rule. If they were "accessible," however, they were subject to a litigation hold and Defendants are potentially entitled to relief under the spoliation rule if the other two elements of the *Residential Funding* framework are satisfied.

6

The parties disagree as to the accessibility of the backup tapes. Plaintiffs contend that "[i]t is undisputed that Lundbeck's backup tapes were full system backups created and 'maintained solely of the purpose of disaster recovery,' and are therefore 'inaccessible.'" (Pls.' Resp. at 10.)For support, Plaintiffs point to the testimony of Michael Vasa Skanstrom, Lundbeck's Vice President of Information Technology, who testified that "the purpose of a . . . disaster backup tape, is in case your system disappears, you can restore it" and that "[t]he e-mail server backup tapes and the file server backup tapes are for the purpose of a recovery in a disaster situation." (*See* Pls.' Resp. at Ex. 10, p. 58.)  Mr. Skanstrom further agreed with counsel's characterization of the backup tapes as "a catastrophic backup system." (*See id.* at p. 122.)  Plaintiffs also point to the testimony of Michael Heslop, Defendants' spoliation expert, who testified that "[d]isaster recovery is the act of backing up all data . . . in systems to backup tapes . . . so the data can be restored at a future point in time if a disaster occurs" and that "the reason for backup tapes" is "for backing up of the primary storage of information." (*See id.* at Ex. 13, p. 66.)

On the other hand, Defendants assert that "the tapes *were* accessible . . ." (*See* Defs.' Reply at 4) (emphasis in original).  However, Defendants have not demonstrated an understanding of what the word *accessible* means in the context of this spoliation analysis because they offer no evidence that the tapes in question were maintained for any purpose other than disaster recovery. In fact, Defendants do not even argue that the backup tapes were used for primary storage or some purpose other than disaster recovery.  Therefore, Plaintiffs' evidence stands unrebutted.  As a matter of law, then, the Court finds that the backup tapes were inaccessible.[3]

---

[3] Again, the rule is that the "litigation hold does not apply to inaccessible backup tapes . . . which may continue to be recycled *on the schedule set forth in the company's policy*." *Zubulake*, 220 F.R.D. at 218 (emphasis added).  Defendants contend that Lundbeck overwrote

7

The inquiry, however, does not end despite the Court's determination that the backup tapes are inaccessible. As stated in *Zubulake*, "it does make sense to create one exception to this general rule" that there is no duty to preserve inaccessible backup tapes beyond the time mandated in the company's policy. *See* 220 F.R.D. at 218. The exception is as follows:

> If a company can identify where particular employee documents are stored on backup tapes, then the tapes storing the documents of "key players" to the existing or threatened litigation should be preserved if the information contained on those tapes is not otherwise available. This exception applies to *all* backup tapes.

*Id.* (emphasis in original). The exception therefore contains three distinct requirements. First, the alleged spoliator must be able to "identify where particular employee documents are stored on [the] backup tapes." Second, the tapes must "stor[e] the documents of 'key players' to the . . . litigation." Third, "the information contained on [the] tapes" must not be "otherwise available." The parties scarcely discuss these three requirements in their briefs.[4] The Court believes that whether a duty to

---

certain backup tapes in contravention of its standard operating procedure, which called for the preservation of backup tapes for at least three months. (*See* Spoliation Mot. at 11.) In support of their argument, Defendants cite the deposition testimony of Mr. Heslop, who testified that "some [backup] tapes were overwritten before even the three-month time frame was up." (*See id.* at Ex. K, p. 84.) However, it is not clear from Mr. Heslop's testimony whether any backup tapes were improperly overwritten *after* the trigger date. At the upcoming hearing, the Court will permit Defendants to offer evidence that Plaintiffs overwrote backup tapes in contravention of their standard operating procedures, but only to the extent that any failure to preserve occurred after the trigger date.

[4] Plaintiffs, however, do discuss the third element of the *Zubulake* exception in some detail. Plaintiffs state that the data contained on the backup tapes is cumulative of that which is already on the server and argue that Caraco "has not and cannot demonstrate that a single document or e-mail is missing." (Pls.' Resp. at 19.) Thus, Plaintiffs suggest that the information contained on the backup tapes is otherwise available. It appears to be undisputed that "each backup tape contains a duplicate copy of data that resides on the server at the time the tape is created." (*See* Pls.' Resp. at 6.) According to Mr. Heslop, "[t]he backup tapes should contain a forensic copy of the data on the server at that point in time," but "do[] not contain deleted files." (*See* Pls.' Resp. at Ex. 13, p. 67.) Defendants argue that whether the backup tapes are

preserve exists in this particular matter hinges entirely on whether the *Zubulake* exception applies. The Court will decline to issue a ruling on the application of the *Zubulake* exception at this time and will instead permit the parties to address the application of the exception at the upcoming hearing.

    B.    *Culpability*

According to the Sixth Circuit, "failures to produce relevant evidence fall 'along a continuum of fault-ranging from innocence through the degrees of negligence to intentionality' . . ." *Adkins*, 554 F.3d at 652 (quoting *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988), *overruled in part on other grounds by Adkins*, 554 F.3d at 652). "Once the duty to preserve attaches, any destruction of [evidence] is, at a minimum, negligent." *Zubulake*, 220 F.R.D. at 220. Therefore, "[t]he three possible states of mind that satisfy [the culpability] requirement are [1] bad faith destruction, [2] gross negligence, and [3] ordinary negligence." *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008). The *Residential Funding* court has explained why ordinary negligence is sufficient in some circumstances to satisfy the "culpable state of mind" requirement:

> The sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence. As Magistrate Judge James C. Francis, IV aptly put it,
>
>> [The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference. It makes little difference to the party victimized by the

---

cumulative, as Plaintiffs suggest, "is impossible to know" because "it is quite likely that information was purposefully deleted [by the users]." (*See* Defs.' Reply at 6) (emphasis omitted). Taking Defendants at their word that they do "not need additional discovery about spoliation," *see* Defs.' Reply at 6, the Court will afford Defendants the opportunity to prove this allegation at the hearing.

9

> destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss.

*Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y.1991). *See generally Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (stating that an adverse inference instruction serves the remedial purpose, "insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party").

*Residential Funding*, 306 F.3d at 108. Thus, "a court need not find bad faith or intentional misconduct before sanctioning a spoliator." *Klezmer ex rel. Desyatnik v. Buynak*, 227 F.R.D. 43, 50 (E.D.N.Y 2005). *See also Doe v. Norwalk Cmty. Coll.*, 248 F.R.D. 372, 379 (D. Conn. 2007) ("a culpable state of mind is established by ordinary negligence"). However, "the more culpable state of mind [bad faith or intentional misconduct] lessen[s] the burden of showing relevance." *Equal Employment Opportunity Comm'n v. LA Weight Loss*, 509 F. Supp.2d 527, 538-539 (D. Md. 2007). In other words,

> [t]he more culpable the state of mind, the easier it is for the party seeking a spoliation adverse inference instruction to demonstrate the third element [of the *Residential Funding* framework] - relevance. "When evidence is destroyed in bad faith (i.e. intentionally or willfully), that fact *alone* is sufficient to demonstrate relevance. By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions."

*Thompson v. United States Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93 (D. Md. 2003) (quoting *Zubulake*, 220 F.R.D. at 220) (emphasis added).

Plaintiffs argue that there is no evidence that they spoliated evidence in bad faith or intentionally and that Defendants therefore cannot meet their burden of demonstrating a "culpable

10

state of mind." (*See* Pls.' Resp. at 17-18.) Plaintiffs' argument, however, is flawed because Plaintiffs have not considered that "a culpable state of mind is established by ordinary negligence," *see Doe*, 248 F.R.D. at 379, and that "[o]nce the duty to preserve attaches, any destruction of [evidence] is, at a minimum, negligent," *Zubulake*, 220 F.R.D. at 220.

If, and only if, Defendants demonstrate at the hearing that Plaintiffs had a duty to preserve the backup tapes in question, the Court will hear evidence as to whether Plaintiffs acted with a "culpable state of mind" and if so, to what extent.

C.     *Relevance*

"The burden falls on the 'prejudiced party' to produce 'some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files.'" *Byrnie*, 243 F.3d at 108 (2d Cir. 2001) (quoting *Kronisch*, 150 F.3d at 128).

> "[R]elevant" in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence. Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that "the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction." *Kronisch*, 150 F.3d at 127; *Byrnie*, 243 F.3d at 110.

*Residential Funding*, 306 F.3d at 108-109 (footnote omitted). The Fourth Circuit, for example, "describes the test for relevant evidence necessary to impose sanctions as that evidence which would 'naturally have been introduced into evidence.'" *Sampson*, 251 F.R.D. at 179-180 (quoting *Vodusek*, 71 F.3d at 156). However,

> [c]ourts must take care not to "hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence," because doing so "would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction." *Kronisch*, 150 F.3d at 128; *Byrnie*, 243 F.3d at 110.

11

*Residential Funding*, 306 F.3d at 109.  Moreover, as discussed above,

> [w]hen evidence is destroyed in bad faith ( i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance.  By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions.

*Zubulake*, 220 F.R.D. at 220 (footnote omitted).

### III.     INSTRUCTIONS TO THE PARTIES REGARDING THE UPCOMING HEARING

The sole purpose of the upcoming hearing will be to determine whether the *Zubulake* exception applies and if so, whether Plaintiffs acted with a culpable state of mind and whether the spoliated evidence is relevant.  The Court will conduct the hearing in two parts.  During part one, the Court will hear evidence related to the duty question only.  The relevant inquiry is whether the *Zubulake* exception applies.  Specifically, whether (1) "the information contained on [the] tapes" is "otherwise available," (2)  the alleged spoliator can "identify where particular employee documents are stored on [the] backup tapes," and (3) the tapes "stor[e] the documents of 'key players' to the . . . litigation.  *See Zubulake*, 220 F.R.D. at 218.  If, and only if, the Court determines that the exception applies, the Court will conduct part two of the hearing, during which the Court will hear evidence related to culpability and relevance.  *See Residential Funding*, 306 F.3d at 107.

At the hearing, the parties need not offer evidence related to issues that have already been determined by the Court herein.  This means that the parties should not discuss whether Plaintiffs allegedly spoliated evidence prior to the trigger date, nor should Defendants address the accessibility of the backup tapes.  Moreover, the parties need not address the numerous extraneous matters discussed in their briefs.  The Court is concerned only with whether the legal test for spoliation has been satisfied under the law discussed herein.

Each side will have two hours to present their arguments, starting with Defendants.

Defendants may reserve time for rebuttal, if they choose.

IV.     **CONCLUSION**

Accordingly,

IT IS ORDERED that Defendants' Motion for Hearing on Spoliation of Evidence [docket entry 141] is granted. The date and time of the hearing will be determined during the teleconference currently scheduled for April 15, 2009, at 2:30 p.m. The trial date in this matter will remain unchanged.

IT IS FURTHER ORDERED that Plaintiffs' "Motion to Strike Declaration of Michael Heslop" [docket entry 160] is denied as moot, as the Court did not rely on it.


|  |  |
|---|---|
| | S/Bernard A. Friedman_____ |
| Dated: April 14, 2009 | BERNARD A. FRIEDMAN |
| Detroit, Michigan | SENIOR UNITED STATES DISTRICT JUDGE |

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 14, 2009, by electronic and/or ordinary mail.

S/Carol Mullins
Case Manager